United States District Court for the
Northern District of Mississippi
Greenville Division

Susan L. Yeager and Amelia A. Nichols,  )
as General Guardians of the Person and  )
Estates of Jacoba Louise Dooley,  )
Plaintiffs  )
  )
  )
  )
v.  )    Civil Action No. 4:17-CV-168-DMB-JMV
  )
  )
  )
R. L. Brand, Roderick Mitchell,  )
B & B Contracting Management  )
Services, Inc., a Mississippi corporation,  )
and New Life Church of Cleveland,  )
Mississippi, a Mississippi not-for-profit  )
Corporation,  )
Defendants  )

## COMPLAINT

Plaintiffs aver:

### JURISDICTION

*1.*    As set forth below, there is complete diversity of citizenship between the parties hereto and thus this Honorable Court has jurisdiction of this action pursuant to the diversity statute, 28 U.S.C.A. §1332(a)(1).

### PARTIES PLAINTIFF

2.    The first Plaintiff, Susan Yeager, is an adult, resident and citizen of the County of St. Clair in the State of Michigan, residing at 3220 N. Shoreview Drive, Fort Graitot, Michigan, 48059.

1

3.     The second Plaintiff, Amelia Nichols, is an adult, resident and citizen of the County of Shelby in the State of Kentucky, residing at 60 Fairlight View Drive, Shelbyville, Kentucky, 40065.

PARTIES DEFENDANT

4.     The first defendant hereto, R. L. Brand, is an adult, resident and citizen of the County of Sunflower, State of Mississippi, residing at 403 L. F. Packer Drive, Ruleville, Mississippi, 38771, where he may be served with the process of this Court in this cause according to law.

5.     The second individual hereto, Roderick Mitchell, is an adult, resident and citizen of the Second Judicial District of the County of Bolivar, State of Mississippi, residing at 113 Magnolia Avenue, Cleveland, Mississippi, 38732, where he may be served with the process of this Court in this cause according to law.

6.     The first corporate defendant hereto is B & B Contracting Management Services, Inc., a corporation, organized and existing under the laws of the State of Mississippi. It is domiciled at 403 L. F. Packer Drive, Indianola, Mississippi, 38771, where it is engaged in construction business support services. It may be served with the process of this court in this cause by serving the same on Deborah P. Brand, its registered, designated agent for the service of process or its president, R.L. Brand, the address of each of whom is 403 L. F. Packer Drive, Ruleville, Mississippi, 38771.

7.     The second corporate defendant hereto is New Life Church of Cleveland, Mississippi, a not-for-profit corporation, organized and existing under the laws of the State of Mississippi. It is domiciled at 113 Magnolia Avenue, Cleveland, Mississippi, 38732, where it is engaged in religious activities. It may be served with the process of this court in this cause by

2

serving the same on Roderick Mitchell, its registered, designated agent for the service of process, whose address is 113 Magnolia Avenue, Cleveland, Mississippi, 38732.

### GUARDIANSHIP PROCEEDINGS IN TWO STATES

8.      The plaintiffs were appointed as guardians of the person of their said mother by judgment of the Probate Court of Sanilac County, Michigan, rendered on the 26th day of July, 2017, cause No 17-32359 GA.  In that same cause and on the same day, the plaintiff, Susan Yeager, was appointed conservator of all assets of her mother's estate. Plaintiffs' attorney has in his possession copies of the proceedings in said Probate Court of Sanilac County, Michigan, which copies are authenticated according to the Laws of Congress.  Plaintiffs attach as Collective Exhibit "1" hereto copies of the aforesaid Michigan proceedings.

9.      The plaintiffs were appointed as general guardians of the person and estate of their said mother by judgment of the Chancery Court of Sunflower County, Mississippi, rendered on the 14th day of September, 2017, cause No. CV 2017-000333.  Plaintiffs qualified as such guardians by posting the bond required of them by the court and by swearing to and subscribing their oath of office as required by law, whereupon the clerk of said Chancery Court issued unto plaintiffs letters of guardianship.  A true copy of plaintiffs' letters of guardianship are attached as Exhibit "2" hereto.

10.      The Mississippi guardianship proceedings were based upon the Michigan guardianship proceedings. Further, the Mississippi guardianship proceedings were based upon §93-13-181 of the *Mississippi Code of 1972, Annotated*, which code section provides for the appointment in this state of a guardian, appointed by a foreign state, for a non-resident ward who has property in this state.

3

11.     Thus, the plaintiffs are general guardians of the person and estate of the mother, Jacoba Louise Dooley, who is adult, resident and citizen of the County of Sanilac, State of Michigan, residing at 7272 Portal Road, Lexington, Michigan, 48450. The plaintiffs are sisters of the half blood.

12.     28 U.S.C.A. §1332(c) (2) provides that a legal representative of an incompetent person shall be deemed to be a citizen only of the State in which his ward is a resident. Thus, for the jurisdictional purposes hereof, the plaintiffs are residents of the State of Michigan, the state of residence of their mother, the said Jacoba Louise Dooley. Further, the plaintiff, Susan L. Yeager, is personally a resident of the State of Michigan.

13.     Thus, there is complete diversity of citizenship between the plaintiffs on the one hand and the defendants on the other.

## CITIZENSHIP AT THE TIME OF THE OCCURRENCE OR AT THE TIME OF FILING SUIT AS REQUISITE FOR DIVERSITY JURIDICTION

14.     While, at the time of the occurrences sued upon herein, the ward was living in Mississippi, shortly after the occurrences sued upon in this case, the ward, due in large measure to her deteriorating mental health, removed back to her original home, Michigan, to be near her daughter, Susan L. Yeager. The ward has re-established her residence in Michigan where she has a driver's license and where she has purchased a home and where she has registered to vote.

15.     The law says that it is citizenship at the time of the filing of suit, not citizenship at the time of the occurrence sued upon, that controls for Federal diversity jurisdiction. See *Dole Food Company v. Patterson*, 538 U. S. 468, 123 S. Ct. 1655, 155 L.Ed. 2d 643 (2003) *Hazelton v. Union Pacific Railroad Co.,* 497 F. Supp. 2d 800 (W.D. La 2007) and *Massarella v. The Lane Company, Inc*., 298 F. Supp.2d 430 (N.D. Miss 2003) which holds:

4

"III. *Diversity Jurisdiction*

[2] Diversity jurisdiction is determined by the citizenship of the parties at the time the lawsuit is filed. *Harris v. Black Clawson Co.,* 961 F.2d 547, 549 (5th Cir.1992)."

Massarella v. The Lane Co., 298 F. Supp. 2d 430, 432 (N.D. Miss. 2003)

## CHANCERY COURT AUTHORITY FOR BRINGING THIS ACTION

14.        § 93-13-27 of the *Mississippi Code of 1972*, *Annotated*, requires that, before a guardian may institute litigation on behalf of his ward, the appointing court grant unto such guardian authority to institute such litigation. The Chancery Court of Sunflower County, Mississippi, by judgment rendered on the 14th day of September, 2017, cause described in paragraph "9" hereof, authorized the bringing of this litigation by these guardians. A certified copy of such judgment is attached as Exhibit '3" hereto.

15.        Thus, the plaintiffs appear herein in their capacity as general guardians of the person and estate of their ward, their mother, Jacoba Louise Dooley.

## FACTS GIVING RISE TO THE CAUSES OF ACTION ASSERTED HEREIN

### a.        THE WARD'S HISTORY

16.        The ward was born on July 31, 1946, and is now 71 years of age. She was born and reared in the State of Michigan, graduating from Eastern Michigan University at Ypsilanti, Michigan, in 1969, with a degree in education. In addition to her post- secondary education, in education, the ward had sufficient education in industrial management to work as a quality control engineer.

17.        In approximately the year 2006, the ward was employed by SportTrac, a firm in Port Huron, Michigan. That company had a branch in Greenwood, Mississippi, and transferred

5

the ward to its Greenwood plant where the ward served as a quality control engineer, the ward's having, as set forth in ¶16, education in industrial management.

18.     When the plant in Greenwood ceased to exist, the ward found employment as a quality control engineer with the Faurecia plant in Cleveland, Mississippi, and moved to Cleveland. While living in Greenwood, the ward's husband, Mr. Dooley, died and is buried at the National Cemetery at Corinth, Mississippi, his being entitled to being so interred by military service during the Vietnam War.

### b. THE CHURCH

19.     The New Life Church, operating as a not-for-profit corporation, is a church located on Highway 61 North in Cleveland, Mississippi, subscribing to the tenants of the Christian religion. It is, however, an autonomous body and is not a hierarchical church that is it is not affiliated with any denomination of the Christian religion. Its minister is the defendant Roderick Mitchell, who styles himself "Bishop".

20.     One of the tenants and practices and of the New Life Church is glossolalia that is the speaking in tongues, which is practiced by some of the members of said church.

### c.     THE WARD'S PASSION FOR THE NEW LIFE CHURCH

21.     Shortly after moving to Cleveland, to begin employment at the Faurecia plant, the ward began to attend services at the New Life Church, subsequently joining said church. The ward's attraction for said church, among other things, is a mutual interest in glossolalia the ward's having a very profound belief, since early adulthood, in glossolalia the ward's actually engaging in such practice.

22.     Not only did the ward become involved with the New Life Church, she became a very ardent and devout member and participant in said church to the extent that said ward

6

became totally enamored of said church and said church became the principal or one of the principal, motivating factors of the ward's life.

23.    The ward was so "wrapped up" in the said New Life Church, that she, the ward, developed a very strong desire to build a house within walking distance of the church.

d.    WARD'S DECLINE IN MENTAL HEALTH

24.    For a number of months prior to the occurrences herein sued upon, plaintiff's mind began to fail. For example there was a CT of her head performed on January 8, 2015, which showed mild, deep, white-matter, small-vessel, chronic-ischemic changes. On January 9, 2015, the ward was diagnosed with low vitamin B-12 which caused neuropsychiatric disorders. On March 6, 2014, her doctor attempted to get a CT of her head but could not get prior approval from the insurance company. On September 16, 2015, the ward was diagnosed with possible early dementia. On December 17, 2015, the ward was diagnosed with uncomplicated, pre-senile dementia. On September 9, 2016, the ward was diagnosed with dementia and was prescribed Aricept. Attached as Exhibit "4" hereto, is a copy of the wards records with Dr. Paul Warrington evincing the above medical tests\treatments\disorders.

25.    Anil Patel, M.D., of Port Huron, Michigan, has diagnosed the ward as having cognitive impairment and cannot make appropriate judgment or manage her finances appropriately. Attached as Exhibit "5" hereto is a copy of Dr. Patel's letter so stating.

e.    WARD'S INHERITANCE

26.    The ward's mother, Martha Louise Williams, died on the 6th day of November 2014. Her Last Will and Testament was probated in cause number 14-P-149 on the probate docket of the District Court of Garrard County, Kentucky, at Lancaster, Kentucky, styled "In re Martha L. Williams". As a result of her mother's death, the ward inherited (or came to own by

7

operation of law, i.e., joint accounts) in excess of $300,000.00. This inheritance is the source of the money used to purchase the imaginary lot from the New Life Church as herein set forth and to pay Brand toward the not-even-started construction of the house on the lot as herein set forth.

     f.     WARD'S PURCHASE OF PHANTOM LOT FROM NEW LIFE CHURCH

     27.     By December of 2014, and after having received some of the largesse from her mother's death, the ward developed an intense desire, fueled in part by her mental impairments and beginnings of Alzheimers Disease, to build a house within walking distance of New Life Church.

     28.     The New Life Church sits on a tract of land of approximately 14 acres located on the west side of U.S. Highway 61 near the northern city limits of the City of Cleveland, Mississippi. Along the north side of said tract of land and leading from U.S. Highway 61 back to the west property line is a driveway (but not a dedicated public street). Attached as Exhibit "6" hereto is an aerial photograph printed from Google Earth Maps, showing the general layout of the New Life Church and the driveway and the lot. Said driveway leads westward from U.S. Highway 61 to Third Street, a north/south street lying to the west of the church property. However, the driveway is not a dedicated street or road and, in point of fact, its access to Third Street is blocked by a gate. (A small portion as shown by the plat, Exhibit "11" is a dedicated street.)

     29.     The ward expressed her desire to the defendant, Bishop Mitchell, that she desired to build a house within walking distance of the church.

     30.     Bishop Mitchell showed the ward a certain lot on the north side of the aforesaid driveway (shown with a red circle on Exhibit "6") said driveway running along the north side of the church property westward to Third Street.

8

31.     Based upon certain representations of Bishop Mitchell, the ward bought the lot from the church. Attached as Exhibit "7" is a copy of the check from the ward to the church for $10,000.00 for the lot. Attached as Exhibit "8" is a photograph of the "lot" taken by plaintiff, Susan Yeager, when she came to Mississippi in the fall of 2016.

32.     In point of fact, the lot purchased from defendant church for $10,000.00 is Lot 28 of a platted addition known as the Re-Subdivision of New Life Church Addition to the Town of Renova, Bolivar County, Mississippi. Attached as Exhibit "9" is a map or plat of said lot and super imposed over which is the said re-subdivision to the New Life Church Addition clearly showing that the subject lot is Lot 28 of said re-subdivision. Said survey is attached as Exhibit "9" hereto.

33.     Even though the ward fully paid defendant church for the said lot, Lot 28 of said re-subdivision of New Life Church Addition, there was never any deed whatsoever delivered to the ward for said lot. Two years has passed since payment, yet no deed.

34.     Attached as Exhibit "10" hereto is a certificate from the Hon. Brenett N. Haynes, Chancery Clerk of Bolivar County, Mississippi, made pursuant to Rule 803 (7) of the *Mississippi Rules of Evidence* as to the absence of any deed to the ward from New Life Church.

35.     Further, and what is worse, is that the New Life Church did not own said Lot 28 of said re-subdivision. Attached as Exhibit "11" hereto is a certified copy of the plat of the said addition showing that it's owners were the defendant, Bishop Roderick Mitchell, and his spouse Mary Mitchell (not a party hereto).

36.     Further the lot, Lot 28, was not only not owned by the defendant church to whom the money had been paid, but rather, as set forth above was owned by Bishop Mitchell and his

9

wife. The lot was heavily mortgaged. Attached as Exhibit "9a" is a certified copy of the deed of trust where Lot 28 was mortgaged to Planters Bank & Trust Co.

37.     That the church's taking money, $10,000.00, Exhibit "7", for realty that it did not own, is nothing less than outright fraud. Further because the church did not own said Lot 28, and cannot convey the same, there is a total failure of consideration. Failure of consideration will support the equitable remedy of rescission and return of the ward's money for which these plaintiffs pray.

38.     The defendant, Roderick Mitchel, is part and parcel of the fraud in that he counseled the ward and took advantage of her decreased mental agility to obtain from her the $10,000.00. Both the church and defendant Mitchell are liable for the $10,000.00 plus interest at the rate to be set by the court plus treble damages as specified in the below Vulnerable Persons Act.

g.     WARD'S CONTRACT WITH BRAND FOR CONSTRUCTION OF A HOUSE ON THE PHANTOM LOT

39.     The ward was informed and believed that it was the desire and intent of the Bishop to have a real property conglomerate, including a school in and around the New Life Church. The ward was further informed and believed that defendant, R.L. Brand, and/or his corporation, B&B Contracting Management Services, Inc., likewise a defendant, had constructed the New Life Church and, in point of fact, had constructed all of the houses on the east side of Third Street facing west which Third Street abutted the church realty on the west.

40.     Defendant, R.L. Brand, was\is a very prominent member the defendant church, was\is a close personal friend of Bishop Mitchell, and occupied the position of elder or deacon or some other ecclesiastical position in the church.

10

41.     The ward was led to believe that the only person with whom she should contract to build her a house on the phantom lot was said R.L. Brand.

42.     On May 1, 2015, the ward signed a contract with R.L. Brand and his construction company, B&B Contracting Management Services, Inc., whereby defendant, R.L. Brand, agreed to construct for plaintiff a residence on the phantom lot according to certain plans and specifications for a total sum of $140,000.00. A copy of said contract is attached as Exhibit "12" hereto. Said contract was prepared by defendant, R.L. Brand. The contract shows on its face that the ward has paid R.L. Brand a total of $105,000.00 on said contract, plaintiff's to date have only been able to find written proof of $70,000.00.

43.     On May 4, 2015, the ward withdrew from her checking account at State Bank & Trust Co., the sum of $30,000.00. Attached as Exhibit "13" hereto is a copy of the withdrawal slip where said money was withdrawn. Attached as Exhibit "13a" hereto is a copy of the cashier's check obtained for this $30,000.00, payable to R. L. Brand and which was endorsed by R. L. Brand.

44.     On August 13, 2015, the ward gave R. L. Brand a check for $5,000.00, which made the initial payment of $35,000.00. Said check was drawn on the ward's checking account at State Bank & Trust, Co. A copy of said check is attached as Exhibit "14" hereto.

45.     On September 13, 2015, the ward gave R. L. Brand another check for $35,000.00 making a total of $70,000.00 paid toward the contract. A copy of said check for $35,000.00 is attached as Exhibit "15" hereto.

46.     Plaintiffs verily believe that their ward, as per the contract, Exhibit "12" hereto, paid R. L. Brand a total of $105,000.00. They are diligently seeking evidence of the payment of the other $35,000.00 and reserve the right to present that to the court at the proper time.

11

47.     Plaintiffs aver that more than 2 years has elapsed since the entering into the contract, Exhibit "12" hereto, for construction of a house on the phantom lot and R. L. Brand has not constructed said house, has not even laid a foundation for said house, and has only hipped up the soil for the under foundation. The photograph Exhibit "8" hereto shows all the work that has been done by said R. L. Brand toward construction of the house on the phantom lot. Hence there is a complete failure of consideration for the payment to R. L. Brand of $70,000.00 (or if he has been paid $105,000.00, there has been a complete failure of for the $105,000.00) paid and under the ancient, equitable doctrines of rescission for failure of consideration, the plaintiffs are entitled to have these monies, that is $70,000.00 (or $105,000.00) as the case may be, returned to them along with interest from the dates of the payments at such rate as may set by the court.

48.     Further, the defendant, R. L. Brand, is liable to these plaintiffs for treble damages under the Vulnerable Persons Act as hereinafter set forth, for which treble damages plaintiffs pray.

49.     R. L. Brand's excuse for not constructing the house that the lot is not on a dedicated street and that the ward does not have a deed to the lot. Bishop Mitchell states that he admits that the whole transaction looks bad and that he would give the $10,000.00 back and try to get Brand to return the $70,000.00 but he has done neither to date.

h.     THE SCAM

50.     The individual defendants, R.L. Brand and Roderick Mitchell, scammed and fleeced the ward into buying a lot from New Life Church which lot was not owned by New Life Church, but rather was owned by Roderick Mitchell and his wife and which lot was mortgaged and could not be conveyed free and clear and by having plaintiff enter into a construction contract with Brand for him, Brand, to construct a house on said lot for $140,000.00 and toward

12

which $140,000.00 plaintiff paid Brand $70,000.00 or $105,000.00 (as may be proved) for which house Brand had no intention of completing and for which Brand never did any work except to hip up the soil for the foundation. Thus Roderick Mitchell and R. L. Brand conspired together to deprive and defraud the ward of that to which she was lawfully entitled, a lot with a deed and a house erected thereon in order to steal from ward the money she paid for the lot, title to which she never got, and the money the ward paid to have the house constructed, which construction was never done. Brand and Mitchell took advantage of the ward's senility and dementia in so scamming and fleecing said ward.

i.     Overreaching by Church and Mitchell

51.    In September of 2016, plaintiffs realized their mother's mind was failing and came to Cleveland and removed their mother back to the State of Michigan where she now resides. The period of December 2014 through September of 2016 the defendant church and the defendant Bishop Mitchell overreached the ward and took advantage of her senility and deteriorating mental condition and caused her to give to the church $37,494.48. Following is an itemization of the gifts, all of which will be substantiated by copies of checks.

| 12/03/14 | New Life Church "gift for building fund" | $10,000.00 |
| 12/09/14 | New Life Church "property to build house on" | $10,000.00 |
| 12/10/14 | New Life Church "gift" | $ 400.00 |
| 01/12/15 | New Life Church "gift and offering" | $ 2,114.00 |
| 03/19/15 | New Life Church | $ 2,500.00 |
| 05/08/15 | New Life Church | $ 5.00 |
| 05/10/15 | New Life Church | $ 305.00 |
| 06/09/15 | New Life Church | $ 305.00 |
| 06/21/15 | New Life Church | $ 305.00 |
| 08/30/15 | New Life Church | $ 150.00 |
| 09/20/15 | New Life Church | $ 76.00 |
| 09/29/15 | New Life Church | $ 76.00 |
| 10/04/15 | New Life Church | $ 76.00 |
| 10/05/15 | New Life Church | $ 100.00 |
| 10/12/15 | Pastor Mary Mitchell | $ 150.00 |
| 10/12/15 | New Life Church | $ 76.00 |
| 10/18/15 | New Life Church | $ 76.00 |
| 10/25/15 | New Life Church | $ 300.00 |
| 10/25/15 | New Life Church | $ 76.00 |
| 11/01/15 | New Life Church | $ 204.00 |
| 11/08/15 | New Life Church | $ 76.00 |
| 11/15/15 | New Life Church | $ 76.00 |
| 11/22/15 | New Life Church | $ 76.00 |

| | | |
|---|---|---|
| 12/13/15 | New Life Church | $ 76.00 |
| 12/20/15 | New Life Church | $ 76.00 |
| 12/27/15 | New Life Church | $ 76.00 |
| 01/07/16 | New Life Church | $ 76.00 |
| 01/07/16 | New Life Church "monthly appreciation" | $ 720.00 |
| 01/17/16 | New Life Church | $ 76.00 |
| 01/24/16 | New Life Church | $ 76.00 |
| 01/31/16 | New Life Church | $ 137.00 |
| 02/07/16 | New Life Church | $ 76.00 |
| 02/14/16 | New Life Church | $ 76.00 |
| 02/21/16 | New Life Church | $ 76.00 |
| 02/25/16 | New Life Church | $ 1,000.00 |
| 02/28/16 | New Life Church | $ 86.00 |
| 03/05/16 | New Life Church | $ 7.00 |
| 03/06/16 | New Life Church | $ 1,000.00 |
| 03/06/16 | New Life Church | $ 76.00 |
| 03/08/16 | New Life Church | $ 5.00 |
| 03/13/16 | New Life Church | $ 314.20 |
| 03/20/16 | New Life Church | $ 75.00 |
| 03/25/16 | New Life Church | $ 1,000.00 |
| 04/03/16 | New Life Church | $ 76.00 |
| 04/10/16 | New Life Church | $ 76.00 |
| 04/17/16 | New Life Church | $ 26.00 |
| 04/17/16 | New Life Church | $ 68.10 |
| 04/17/16 | New Life Church | $ 1.53 |
| 04/19/16 | New Life Church | $ 1,534.00 |
| 04/24/16 | New Life Church | $ 117.90 |
| 05/01/16 | New Life Church | $ 117.00 |
| 05/01/16 | New Life Church | $ 80.00 |
| 05/10/16 | New Life Church | $ 117.00 |
| 05/15/16 | New Life Church | $ 94.00 |
| 05/15/16 | New Life Church | $ 1,000.00 |
| 05/20/16 | New Life Church | $ 109.40 |
| 05/22/16 | Pastor Mary Mitchell | $ 25.00 |
| 05/29/16 | New Life Church | $ 74.00 |
| 06/04/16 | New Life Church | $ 5.00 |
| 06/05/16 | New Life Church | $ 72.35 |
| 06/11/16 | New Life Church | $ 5.00 |
| 06/12/16 | New Life Church | $ 71.00 |
| 06/19/16 | New Life Church | $ 71.00 |
| 06/26/16 | New Life Church | $ 71.00 |
| 07/03/16 | New Life Church | $ 76.00 |
| 07/10/16 | New Life Church | $ 76.00 |
| 07/17/16 | New Life Church | $ 76.00 |
| 07/17/16 | New Life Church | $ 5.00 |
| 07/19/16 | Bishop Roderick Mitchell | $ 20.00 |
| 07/20/16 | Bishop Roderick Mitchell | $ 210.00 |
| 07/24/16 | New Life Church | $ 76.00 |
| 07/31/16 | New Life Church | $ 76.00 |
| 08/09/16 | New Life Church | $ 76.00 |
| 08/14/16 | New Life Church | $ 76.00 |
| 08/28/16 | New Life Church | $ 76.00 |
| 09/02/16 | New Life Church | $ 50.00 |
| 09/18/16 | New Life Church | $ 164.00 |
| Total to New Life Church | | $37,494.48 |
| 05/04/15 | R. L. Brand | $30,000.00 |
| 08/13/15 | R. L. Brand "complete pmt. of $35,000.00" | $ 5,000.00 |
| 09/13/15 | R. L. Brand "house phase #2" | $35,000.00 |
| Total to R. L. Brand | | 70000.00 |

The above itemization includes the $10,000.00 paid for the lot so this figure should be reduced to $27,494.48.

52.     This $27,494.48 was in violation of the Vulnerable Persons Act and should be returned and treble damages awarded.

## VULNERABLE ADULT

53.     Ward, at all times when dealing with defendants Mitchell and Brand, was a "Vulnerable Person". Particularly §43-47-5 (q) *Mississippi Code of 1972, Annotated*, defines a vulnerable person as follows:

> '(q) "Vulnerable person" means a person, whether a minor or adult, whose ability to perform the normal activities of daily living or to provide for his or her own care or protection from abuse, neglect, exploitation or improper sexual contact is impaired due to a mental, emotional, physical or developmental disability or dysfunction, or brain damage or the infirmities of aging. The term "vulnerable person" also includes all residents or patients, regardless of age, in a care facility. The department shall not be prohibited from investigating, and shall have the authority and responsibility to fully investigate, in accordance with the provisions of this chapter, any allegation of abuse, neglect or exploitation regarding a patient in a care facility, if the alleged abuse, neglect or exploitation occurred at a private residence."

> Miss. Code. Ann. § 43-47-5 (West)

54.     By the acts herein described, that is selling the ward a lot and not delivering her a deed and by taking money therefor on the part of Mitchell and by agreeing to construct a house for the ward and taking the money and not doing so, the defendants', Mitchell and Brand, exploited the ward within the meaning of § 43-47-5(i) which is quoted from Westlaw as follows, to wit:

> "(i) "Exploitation" means the illegal or improper use of a vulnerable person or his resources for another's profit, advantage or unjust enrichment, with or without the consent of the vulnerable person, and may include actions taken pursuant to a power of attorney. "Exploitation" includes, but is not limited to, a single incident."

15

Miss. Code. Ann. § 43-47-5 (West)

55.    Further § 11-7-165 of the *Mississippi Code of 1972, Annotated*, provides that where one by fraud takes property belonging to a vulnerable adult in excess of $250.00 in value, treble damages are authorized.

## DEMAND FOR JUDGMENT

1.    That the court, by way of the equitable doctrine of rescission for failure of consideration, declare that the transaction between the ward and the defendant church concerning Lot 28 is void and award plaintiffs a judgment against the church and the defendant Roderick Mitchell, for the $10,000.00 purchase price plus interest from the day the check was given until paid at the rate of interest set by the court.

2.    That the court will award the plaintiffs treble damages for the amounts awarded pursuant to paragraph "1" hereof under the Vulnerable Persons Act set forth above.

3.    That the court, by way of the equitable doctrine of rescission for failure of consideration, declare the contract between the ward and Brand and B & B, Exhibit "12", to be void and will order a return of all sums paid pursuant to said contract plus interest from the date payments were made at the rate of interest set by the court.

4.    That the court will award the plaintiffs treble damages for the amounts awarded pursuant to paragraph "3" hereof under the Vulnerable Persons Act set forth above.

5.    That the court will award plaintiffs a monetary judgment against Bishop Mitchell and the church for the gifts made by the ward as per the above itemization thereof in the amount of $27,114.48 plus interest and shall treble this sum under the Vulnerable Persons' Act.

16

6. That the plaintiffs be awarded any other relief to which they may be entitled including, particularly, attorney's fees and punitive damages for the egregious conduct of the defendants described herein.

RECAP: A judgment against Mitchell and the church for $30,000.00 ($10,000.00 trebled) plus interest for the lot and a judgment against Mitchell and the church for over-reaching contributions, $81,343.44, ($21,114.48 trebled) for a total judgment again Mitchell and the church of $111,343.44 plus interest and a judgment against Brand and B & B for at least $210,000.00 ($70,000.00 trebled) ($315,000.00 ((trebled)) if $105,000 has been paid on the contract) plus interest plus attorney's fees and punitive damages.

Respectfully submitted this the 16th day of November 2017.

Susan Yeager and Amelia Nichols,
as guardians, Plaintiffs

By: /s/ Robert G. Johnston
Robert G. Johnston
Attorney At Law
MS Bar No. 3174
Alexander, Johnston & Alexander, P.A.
112 North Pearman Avenue
P.O. Box 1737
Cleveland, MS 38732-1737
662-843-3631
Fax 662-843-3638
E-Mail: alexjohn@cableone.net

STATE OF MICHIGAN
COUNTY OF ST. CLAIR

Personally came and appeared before the undersigned authority at law, duly commissioned and acting in and for the jurisdiction aforesaid, Susan L. Yeager, who, having been duly sworn by me according to law, states on oath that all the matters and facts alleged in the foregoing instrument are true and correct as therein stated, except those stated upon information and belief, and these are verily believed to be true.

17

_Susan L. Yeager_

Susan L. Yeager

Sworn to and subscribed before me on this the 21st day of November 2017.

_Linda Gray McGrath_

NOTARY PUBLIC

MY COMMISSION EXPIRES:

STATE OF KENTUCKY
COUNTY OF JEFFERSON

> LINDA GRAY McGRATH
> NOTARY PUBLIC - STATE OF MICHIGAN
> COUNTY OF SAINT CLAIR
> My Commission Expires May 2022
> Acting in the County of St. Clair

Personally came and appeared before the undersigned authority at law, duly commissioned and acting in and for the jurisdiction aforesaid, Amelia A. Nichols, who, having been duly sworn by me according to law, states on oath that all the matters and facts alleged in the foregoing instrument are true and correct as therein stated, except those stated upon information and belief, and these are verily believed to be true.

_Amelia A. Nichols_

Amelia A. Nichols

Sworn to and subscribed before me on this the 27 day of November 2017.

_Danette K. Green_

NOTARY PUBLIC # 503207

MY COMMISSION EXPIRES: Jan. 7, 2018

18