# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

SUSAN L. YEAGER, et al.                                                               PLAINTIFFS

V.                                                                    NO. 4:17-CV-168-DMB-JMV

R.L. BRAND, et al.                                                                    DEFENDANTS

## ORDER

Before the Court for determination is the issue of damages to be awarded the plaintiffs following the Court's entry of default judgment against the defendants.

## I
## Procedural History

On December 1, 2017, Susan L. Yeager and Amelia A. Nichols, acting as guardians of their mother Jacoba Louise Dooley, filed a complaint in this Court against R.L. Brand; Roderick Mitchell; B & B Contracting Management Services, Inc. ("B&B"); and New Life Church of Cleveland, Mississippi ("New Life"). Doc. #1. The complaint alleges that during the time relevant to this action, Dooley's mind was beginning to fail and:

> The individual defendants, R.L. Brand and Roderick Mitchell, scammed and fleeced the ward into buying a lot from New Life Church which lot was not owned by New Life Church, but rather was owned by Roderick Mitchell and his wife and which lot was mortgaged and could not be conveyed free and clear and by having plaintiff enter into a construction contract with Brand [and B&B] for him, Brand, to construct a house on said lot for $140,000.00 and toward which $140,000.00 plaintiff paid Brand $70,000.00 or $105,000.00 (as may be proved) for which house Brand had no intention of completing and for which Brand never did any work except to hip up the soil for the foundation. Thus Roderick Mitchell and R. L. Brand conspired together to deprive and defraud the ward of that to which she was lawfully entitled, a lot with a deed and a house erected thereon in order to steal from ward the money she paid for the lot, title to which she never got, and the money the ward paid to have the house constructed, which construction was never done. Brand and Mitchell took advantage of the ward's senility and dementia in so scamming and fleecing said ward.

*Id.* at ¶ 50. As relief, the plaintiffs seek (1) rescission of the purchase contract with New Life and

Mitchell; (2) rescission of the construction contract with Brand and B&B; (3) damages in the form of return of the purchase price and monies paid under the construction contract, plus interest; (4) attorney's fees; (5) treble damages assessed against Mitchell and New Life under Mississippi's Vulnerable Persons' Act; and (6) any other relief to which they may be entitled. *Id.* at 16–17.

Mitchell and New Life were served with a summons and copy of the complaint on December 2, 2017. Doc. #5 at 2; Doc. #6 at 2. Brand and B&B were served on December 5, 2017. Doc. #3 at 2; Doc. #4 at 2. Mitchell and New Life filed separate answers to the complaint on December 20, 2017. Doc. #7; Doc. #8. Neither Brand nor B&B answered the complaint and, on December 28, 2017, the plaintiffs moved for entry of default. Doc. #11.

The Clerk of the Court entered default against Brand and B&B on January 2, 2018. Doc. #12. The plaintiffs moved for default judgment the following day. Doc. #15. That same day, the Clerk received from Brand a letter styled, "Answer to judgement." Doc. #16. Brand's letter contradicts most of the facts alleged in the complaint but offers no excuse for the default and does not request that the default be set aside.

On February 12, 2018, the plaintiffs filed a "Stipulation of Dismissal as to Two Defendants Only." Doc. #28. The stipulation, which is signed by Brand (on his own behalf and purportedly on behalf of B&B),[1] the plaintiffs' counsel, Mitchell, and New Life, stipulates to the dismissal with prejudice of Mitchell and New Life. *Id*. at 2. Over the next week, the plaintiffs, in support of their motion for default judgment, filed two affidavits, a memorandum brief, and a letter from a medical doctor opining on Dooley's mental condition. Docs. #31, #32, #34, #35.

On April 12, 2018, this Court entered an order granting default judgment against the

---

[1] "[A] corporation as a fictional legal person can only be represented by licensed counsel." *In re K.M.A., Inc.*, 652 F.2d 398, 399 (5th Cir. 1981). To the extent Brand's filings purport to represent B&B, they are properly considered without legal effect. *See Torres v. Krueger*, 596 F. App'x 319, 321 (5th Cir. 2015) ("This court has previously affirmed … striking of pleadings of unrepresented corporations.").

2

defendants on the issue of liability and setting an evidentiary hearing on the issue of damages for April 30, 2018. Doc. #39 at 9. Four days later, the Court, at the plaintiffs' request, issued an order canceling the evidentiary hearing in favor of allowing the plaintiffs to submit documentary evidence and arguments on the issue of damages. Doc. #40. The order also provided that "[t]he defaulting defendants may file evidence and a response to the plaintiffs' evidence and brief within fourteen (14) days of receipt of such documents. The plaintiffs may reply within seven (7) days of the response." *Id*.

In compliance with this Court's order, between April 23–30, 2018, the plaintiffs filed various documents and a brief on the issue of damages. Docs. #42, #43, #44, #45, #46, #47. After the defaulting defendants failed to respond to these filings, the plaintiffs, on May 18, 2018, filed a motion asking the Court to decide the issue of damages on the existing submissions. Doc. #49.

On May 24, 2018, Brand filed a pro se "Answer" which summarizes various pieces of evidence and expected testimony, and explains why the evidence would disprove certain allegations in the complaint. Doc. #50. One week later, on May 31, 2018, the plaintiffs filed a "response" to the "answer." Doc. #51.

On June 25, 2018, Brand filed "Defendant's motion to deny motion Quantum of damages." Doc. #52. Three days later, Brand filed a motion requesting an unspecified hearing. Doc. #53. The plaintiffs responded in opposition to both motions. Doc. #54; Doc. #55.

## II
### Brand's Answer

As explained above, approximately four months after default and one month after this Court's granted the plaintiffs' motion for default judgment, Brand filed a document titled, "Answer." However, an untimely answer does not count as a pleading under the Federal Rules so as to defeat a default judgment. *In re Suprema Specialties, Inc.*, 330 B.R. 40, 46 (S.D.N.Y. 2005).

3

This is especially true where, as here, there has been no motion to set aside entry of default and no showing of good cause. *See* Fed. R. Civ. P. 55(c) ("The court may set aside an entry of default for good cause …."). Accordingly, Brand's untimely answer does not alter the plaintiffs' entitlement to default judgment.

## III
## Damages Standard

Following a default judgment, "[a] plaintiff bears the burden of proving his damages." *Niemi v. Lasshofer*, 770 F.3d 1331, 1355 (10th Cir. 2014); *see Flynn v. People's Choice Home Loans, Inc.*, 440 F. App'x 452, 457 (6th Cir. 2011) (after default judgment, "the burden of establishing damages rest[s] squarely and solely" on plaintiff). Generally, a district court may only award damages without an evidentiary hearing if "the amount claimed is a liquidated sum or one capable of mathematical calculation."[2] *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

Regarding damages, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Therefore, "the relief prayed for in a complaint defines the scope of relief available on default judgment." *United States v. Giles*, 538 F.Supp.2d 990, 994 (W.D. Tex. 2008); *see Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007) (Rule 54(c) "permits neither increases 'in kind ... or ... in amount' from the figure specified in the demand for judgment"). If the requested relief does not differ in kind from, or exceed in amount, what is demanded in the pleadings, the Court must then determine "if the requested relief is appropriate based on governing law." *Fagan v. Lawrence Nathan Assocs., Inc.*, 957 F.Supp.2d 784, 801 (E.D. La. 2013).

---

[2] For the reasons discussed below, the Court concludes that the amount to be awarded here is one capable of mathematical calculation.

# IV
## Analysis

In their brief, the plaintiffs seek (1) $70,000 in actual damages, representing the amount paid to Brand by Dooley; (2) $11,649.44 in pre-judgment interest; and (3) $23,600.71 in attorney's fees and expenses. The plaintiffs also seek treble damages.

### A. Actual Damages

There is no dispute that where, as here, a plaintiff has been induced to purchase property through fraud or misrepresentation, the plaintiff is entitled to rescission of the construction contract and return of the contract price.[3] *See Browder v. Williams*, 765 So.2d 1281, 1285 (Miss. 2000) ("We [have] held that a buyer who has been deceived by material false representations in the procurement of a contract may elect to rescind and to be restored to the position he occupied at the time of sale."). There is also no dispute that Dooley paid the defaulting defendants $70,000 towards the construction contract price. In his "Answer" and motion to deny damages, Brand argues that the proper recovery is actually $60,000 because Brand performed $10,000 worth of improvements on the property and because the plaintiffs, during a state board hearing, said they would accept $60,000 in damages. Doc. #52 at 1; Doc. #50-1.

As an initial matter, pursuant to Federal Rule of Evidence 408, the plaintiffs' offer to settle for a certain sum may not be used "to prove or disprove the validity or amount of a disputed claim …." Furthermore, while it is possible that Brand, under a theory of unjust enrichment, may be entitled to recover his expenses from the actual owner of the property, such recovery is wholly inappropriate against Dooley, who received no benefit from Brand's work. *See Hans v. Hans*, 482 So.2d 1117, 1122 (Miss. 1986) (unjust enrichment applies "where the person sought to be charged

---

[3] This Court previously concluded that the plaintiffs are entitled to rescission. Doc. #39 at 6.

5

is in possession of money or property"). Accordingly, the plaintiffs are entitled to reimbursement of the $70,000 paid for the property.

## B. Pre-Judgment Interest

"State law governs the award of prejudgment interest in diversity cases." *Meaux Surface Protection, Inc. v. Fogleman*, 607 F.3d 161, 172 (5th Cir. 2010). Under Mississippi law, "[a]n award of prejudgment interest is within the trial court's discretion." *In re Miss. Medicaid Pharm. Average Wholesale Price Litig.*, 190 So.3d 829, 843 (Miss. 2015). A trial court acts within its discretion when it allows pre-judgment interest "in cases where the amount due is liquidated when the claim is originally made or where the denial of a claim is frivolous or in bad faith." *Id*. "Damages being liquidated refers to damages that are set or determined by a contract when a breach occurs." *Benchmark Health Care Ctr., Inc. v. Cain*, 912 So.2d 175, 183 (Miss. Ct. App. 2005) (internal quotation marks omitted). "Unliquidated damages are damages that have been established by a verdict or award but cannot be determined by a fixed formula, so they are left to the discretion of the judge or jury." *Id*. at 183–84 (alterations and internal quotation marks omitted). However, "interest may be denied where there is a bona fide dispute as to the amount of damages as well as the responsibility for the liability therefor." *Coastal Hardware & Rental Co., LLC v. Certain Underwriters at Lloyds, London*, 120 So.3d 1017, 1030 (Miss. Ct. App. 2013).

Here, the plaintiffs' complaint alleged uncertainty on the amount owed under the contract. Furthermore, there is no indication of a bad faith or frivolous denial of the plaintiffs' claim. Accordingly, the Court, in the exercise of its discretion, declines to award pre-judgment interest.

## C. Attorney's Fees

"In [a] diversity case, where [state] law supplies the rule of decision, state law controls both the award of and the reasonableness of fees awarded." *Wal-Mart Stores, Inc. v. Qore, Inc.*,

6

647 F.3d 237, 242 (5th Cir. 2011) (alterations and internal quotation marks omitted). "Mississippi law is well-settled with respect to awarding attorney's fees. If attorney's fees are not authorized by the contract or by statute, they are not to be awarded when an award of punitive damages is not proper." *Miller v. Parker McCurley Props., L.L.C.*, 36 So.3d 1234, 1243–44 (Miss. 2010) (quotation marks omitted). "Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." Miss. Code Ann. 11–1–65(1)(a).

Here, the plaintiffs' allegations that the defaulting defendants intentionally entered into a construction contract they had no intention of completing support a finding of actual fraud. *See Hamilton v. Hopkins*, 834 So.2d 695, 703 (Miss. 2003) (punitive damages appropriate where breach caused by intentional wrong or where defendant acted maliciously or with reckless disregard of the plaintiff's rights). The Court therefore finds that attorney's fees are appropriate. To this end, Mississippi requires that a court only award *reasonable* attorney's fees. *Mabus v. Mabus*, 910 So.2d 486, 488 (Miss. 2005). "The reasonableness of attorney's fees are controlled by the applicable Mississippi Rules of Professional Conduct 1.5 factors and the *Mckee [v. Mckee*, 418 So.2d 764, 767 (Miss. 1982)] factors." *Id*. at 489 (footnote omitted).

Mississippi Rule 1.5(a) provides eight non-exclusive factors for determining reasonableness:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.

Furthermore, the *McKee* factors include:

(1) relative financial ability of the parties[,] (2) the skill and standing of the attorney employed, (3) novelty and difficulty of issues in the case, (4) the responsibility required in managing the case, (5) time and labor required, (6) the usual and customary charge in the community, and (7) whether the attorney was precluded from undertaking other employment by accepting the case.

*Black v. Black*, 240 So. 3d 1226, 1235 (Miss. Ct. App. 2017).

In support of the request for attorney's fees, the plaintiffs submitted an itemized bill of their attorney Robert Johnston, showing 113 hours of legal work at an hourly rate of $180, for a total of $20,340. Doc. #44 at 2–7. The same bill shows litigation expenses in the amount of $3,260.71. *Id*. at 6–7. The plaintiffs also submitted the affidavit of Boyd Atkinson, a local attorney, who states that Johnston's "hourly rate … is reasonable in light of what other attorneys in this area charge." Doc. #45 at 7.

In considering the plaintiffs' requested fees, the Court begins by recognizing that a fee request should not include "hours that are excessive, redundant, *or otherwise unnecessary* ...." *Mabus*, 910 So.2d at 494 (emphasis added). The plaintiffs' fee request violates this rule by including hours related to a state administrative proceeding before the Mississippi Board of Contractors. Such hours must be excluded from the plaintiffs' fee award.[4]

In considering the remaining fees, the Court finds that Johnston's hourly rate is reasonable for an attorney of his skill in this area. Furthermore, while this case involved a default judgment, an ordinarily low-effort endeavor, it also necessarily involved guardianship issues. Accordingly,

---

[4] Rather than the Court ultimately determining which fees and expenses are associated with the Board of Contractors matter, the plaintiffs, as indicated below, will have the opportunity to resubmit their requested fees and expenses.

in the absence of any evidence of the parties' respective financial means, the Court deems the remaining fees to be reasonable.

### D. Treble Damages

Mississippi's Vulnerable Person's Act provides:

> In a civil action where it is proven that a person took property having a value of Two Hundred Fifty Dollars ($250.00) or more belonging to a vulnerable adult by conversion, embezzlement, extortion, theft or fraud without the owner's consent, or obtained the owner's consent by intimidation, deception, undue influence or by misusing a position of trust or a confidential relationship with the owner, then whether the action is to recover the property or damages in lieu thereof, or both, damages shall be recoverable up to three (3) times the amount of the monetary damages or value of the property embezzled, converted or otherwise stolen, in addition to any other damages.

Miss. Code Ann. § 11-7-165(1).

This Court, in its previous order determining liability, concluded that treble damages are warranted under Mississippi's Vulnerable Person's Act. Doc. #39 at 8. However, in their brief, the plaintiffs argue that the trebled damages authorized by the Act apply to their claim for attorney's fees *in addition* to the actual damages suffered. The Court does not agree.

By its express language, the Act provides for trebled damages of "the amount of the monetary damages or value of the property embezzled, converted or otherwise stolen …." Mississippi courts have not appeared to have considered whether attorney's fees are considered "damages" within the meaning of the Act. In the absence of such authority, the Court turns to the plain meaning of the word "damages." *See Edmonds v. State*, 234 So.3d 286, 290 (Miss. 2017) ("When interpreting a statute that is not ambiguous, this Court will apply the plain meaning of the statute. To determine the plain meaning, we must look at the words of the statute.") (citation and internal quotation marks omitted).

When used in the legal context (as in the Act), damages are defined as "[m]oney … ordered

to be paid to[] a person as compensation for loss or injury." BLACK'S LAW DICTIONARY (10th ed. 2014), damages. Consistent with this definition, other courts have characterized attorney's fees as damages, so as to fall under a treble damage statute, when the fees "are part of the substance of a lawsuit, that is, if the fees being sought are the legitimate consequences of the tort or breach of contract sued upon, such as in an insurance bad faith case …." *Ferrell v. Glenwood Brokers, Ltd.*, 848 P.2d 936, 941 (Colo. 1993) (citation and internal quotation marks omitted). Conversely, where "attorney fees are … simply the consequence of a contractual agreement to shift fees to a prevailing party, then they should be treated as 'costs' …." *Id.* at 941. The Mississippi Supreme Court has implicitly embraced a similar distinction, writing:

> With the sole exception of punitive damages cases, in the absence of contractual provision or statutory authority therefor, this Court has never approved awarding trial expenses and attorney's fees to the successful litigant. It has consistently been our view that such expenses are not allowable as part of the costs ….
>
> That a party may not be able to get his attorney's fees paid as part of the costs does not mean that attorney's fees are not a proper element of damages in an appropriate case. Where a grantee in a warranty deed was required to employ an attorney to perfect his title, payment of grantee's attorney's fees was part of the damages in a subsequent suit against the grantor for breach of warranty. Similarly, where an insured is compelled to defend himself in an action because his insurer breached its contract in denying its obligation to defend him under its liability policy, the attorney's fees incurred in the defense of that action may be awarded the insured as contract damages in a subsequent action against the insurer.

*Grisham v. Hinton*, 490 So.2d 1201, 1205–06 (Miss. 1986) (citations omitted).

Based on the above authority, the Court concludes that attorney's fees are properly deemed costs, rather than damages, when they are based on punitive damages, contractual provisions, or similar fee shifting provisions. In contrast, fees are properly considered an element of damages when, as in the case of slander of title or bad faith denial of an insurance claim, the fees are a natural consequence of the underlying action.

Here, the plaintiffs are entitled to fees not because of any natural consequence of the

defendants' conduct but because the nature of the conduct rose to the level of fraud.  Under these circumstances, the Court concludes that the fees are properly characterized as costs rather than damages and, therefore, are not a part of the Act's treble provision.

## V
## Remaining Motions

Having found the plaintiffs are entitled to a specific sum, the plaintiffs' motion to decide the case on existing submissions will be granted.  Brand's motion for an unspecified hearing and motion to deny damages will both be denied.

## VI
## Conclusion

The plaintiffs' motion to decide the case on existing submissions [49] is **GRANTED**.  Brand's motion to deny damages [52] and motion for a hearing [53] are **DENIED**.  The plaintiffs are entitled to $210,000 in trebled actual damages, plus their requested attorney's fees and related litigation costs, less those fees and costs related to the administrative proceedings before the Mississippi Board of Contractors.  The plaintiffs are **DIRECTED** to resubmit their requested fees and expenses within seven (7) days of this order.

**SO ORDERED**, this 28th day of September, 2018.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**